## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 27 2016, 7:44 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael G. Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrew W. Barrus, <br><br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br><br> *Appellee-Plaintiff.* | December 27, 2016 <br><br> Court of Appeals Case No. 35A02-1605-CR-1170 <br><br> Appeal from the Huntington Circuit Court. <br> The Honorable Thomas M. Hakes, Judge. <br> Cause Nos. 35C01-1412-F4-278, 35C01-0710-FB-73 |

**Friedlander, Senior Judge**

[1] Andrew W. Barrus, who was on probation at the time of his offenses, appeals from the trial court's sentencing order imposing a sentence for his new offenses and sentencing him for the revocation of his probation. We affirm and remand.

[2] Barrus entered into a plea agreement in Cause Number 35C01-0710-FB-73. After his plea of guilty to eight counts of burglary, each as a class B felony and one count of burglary as a class C felony, the trial court sentenced Barrus to an aggregate sentence of twenty-four years with three years suspended to probation. While serving on probation under FB-73, Barrus was charged in Cause Number 35C01-1412-F4-278, and a petition to revoke his probation was filed in FB-73.

[3] The circumstances at issue in F4-278 are as follows. Colton Miller, who was on parole from a child molesting conviction, and his sister's boyfriend, Cody Smith, who had warrants out for his arrest, were drinking at Miller's apartment on the evening of October 2, 2014. Miller texted Jonathan Tipton, his friend, to join them. Tipton did join them, and after they had been drinking for some time, Tipton became angry when Miller answered a telephone call from a girl. The two men threw punches at each other and scuffled before Miller and Smith were able to remove Tipton from the apartment. Tipton then sent Miller threatening text messages. Smith left Miller's apartment sometime later by exiting through a window after the two heard noises that sounded like someone was attempting to kick in the front door.

[4] After being forcibly removed from Miller's apartment, Tipton went to the apartment where his cousin, Barrus, was staying with Andrea Reynolds. Tipton told the two that Miller and Smith had jumped him and beat him at Miller's apartment. Even though Barrus was on probation under FB-73, he, Tipton, and Reynolds left the apartment. Reynolds drove the three to Miller's

apartment in Tipton's car to seek revenge. Reynolds parked the car near Miller's apartment and waited while the two men left. After Barrus and Tipton exited the vehicle, Reynolds saw Smith run past the car.

[5]   Tipton was followed by Barrus, who carried either a metal pry bar or floor jack, through a window of Miller's apartment where they proceeded to viciously attack Miller. Barrus struck Miller on the head with the metal bar, causing Miller to fall to the floor, and then Barrus and Tipton hit, stomped, and kicked Miller to the point that Miller thought that they were going to kill him.

[6]   Tipton and Barrus eventually left Miller's apartment through the front door, rejoined Reynolds, and told her to quickly drive away from the area. Miller unsuccessfully attempted to clean up the blood and stop the bleeding from his wounds, eventually going to an emergency room with the help of his sister, who arrived at the apartment and saw his condition.

[7]   After Tipton, Barrus, and Reynolds returned to Reynolds' apartment, the men bragged and laughed about what they had done to Miller. They then tried to hide evidence of what they had done by washing their clothes and hiding the metal bar in the garage. Later, Barrus cleaned the metal bar and took it back to his place of work from where he had taken it. Barrus and Tipton then had Reynolds agree to provide an alibi for them once the police began their investigation of the incident.

[8]   Treatment of Miller's injuries included multiple stitches and staples. Miller suffered from great pain and memory loss after the beating. At first, police

officers had difficulty locating Barrus and Tipton. Reynolds lied for them to the police until officers convinced her that the two were using her. Barrus also told his good friend Ron Smithley about what he and Tipton had done to Miller. Police officers learned about Smithley's connection with Barrus.

Charges were filed against Tipton and Barrus, and, at the conclusion of Barrus' jury trial, he was found guilty of Level 1 felony burglary and level 5 felony battery. Barrus pleaded guilty to an habitual offender enhancement.

During Barrus' sentencing hearing, the trial court, per the State's request, reduced Barrus' conviction of Level 5 felony battery to a class B misdemeanor conviction. The trial court also found that Barrus had violated the conditions of his probation in FB-73 and revoked his probation. In F4-278, the trial court sentenced Barrus to thirty-nine years' incarceration for burglary and six months' incarceration for battery, to be served consecutively. The trial court imposed a sentence of eighteen years' imprisonment to be served consecutively to the other counts for the habitual offender determination. With respect to FB-73, the trial court ordered Barrus to serve the remaining three years of his sentence in the Indiana Department of Correction to be served consecutively to Barrus' sentence in F4-278, and to Barrus' sentences in Madison and Grant counties. Barrus now appeals his sentence contending that it is inappropriate in light of the nature of the offense and the character of the offender.

We note, and the State concedes, that the trial court erroneously imposed a sentence for the habitual offender determination in F4-278 without attaching

the determination and sentence to one of Barrus' convictions. Indiana Code section 35-50-2-8(j) (2014) provides that the habitual offender finding determines a defendant's status. It is not a separate crime resulting in a consecutive sentence. *Id.* Instead, the trial court shall attach the habitual offender enhancement to the felony conviction with the highest sentence imposed. *Id.* On remand, the trial court should correct its order, attaching the sentence for the habitual offender status to Barrus' burglary conviction in F4-278.

[12] Additionally, Barrus does not challenge the sentence imposed for the revocation of his probation in FB-73. Appellate review of sentences imposed for probation revocations is for an abuse of discretion. *Prewitt v. State*, 878 N.E.2d 184 (Ind. 2007). Indiana Code section 35-38-2-3(h)(3) (2012) authorizes a trial court upon finding that a condition of probation was violated to impose a sanction including ordering execution of all of the sentence that was suspended at the time of initial sentencing. That is exactly what the trial court did in this case.

[13] Barrus complains that his sentence is inappropriate in light of the nature of the offense and the character of the offender because he was not the initial aggressor in the original fight between Tipton and Miller, and because he

received a longer sentence than Tipton's.[1]

We have the constitutional authority to revise a sentence if, after careful consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See* Ind. Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. Even if a trial court follows the appropriate procedure in arriving at its sentence, we maintain the constitutional power to revise a sentence we find inappropriate. *Hope v. State*, 834 N.E.2d 713 (Ind. Ct. App. 2005). Although we are not required under Appellate Rule 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). On appeal, Barrus bears the burden of persuading us that his sentence is inappropriate. *Rutherford*, 866 N.E.2d 867. Indeed, he bears the burden of establishing that his sentence is inappropriate in light of both the nature of the offenses and his character. *Williams v. State*, 891 N.E.2d 621 (Ind. Ct. App. 2008).

Under our review, the question is not whether another sentence would be more appropriate, but whether the sentence imposed is inappropriate. *Foutch v. State*,

---

[1] Barrus attempts to include the sentence imposed for his probation revocation under FB-73 in our analysis of the appropriateness of his sentence in F4-278. As discussed above, sentences imposed for probation revocations are reviewed for an abuse of discretion. We decline to include the three-year sentence for FB-73 in our analysis of the sentence for F4-278. Tipton's direct appeal appears as *Tipton v. State*, No. 35A05-1511-CR-1986 (Ind. Ct. App. May 25, 2016).

53 N.E.3d 577 (Ind. Ct. App. 2016).  Whether the sentence imposed is inappropriate turns on many factors including the defendant's culpability, the severity of the crime, and the damage done to others.  *Parks v. State*, 22 N.E.3d 552 (Ind. 2014).

[17]  Barrus was sentenced for his convictions of Level 1 felony burglary, enhanced by his status as an habitual offender, and Class B misdemeanor battery.  The sentencing range for a Level 1 felony conviction is between twenty and forty years' imprisonment with an advisory sentence of thirty years.  Ind. Code § 35-50-2-4(b) (2014).  Barrus received a sentence of thirty-nine years.  The enhancement for his habitual offender status was a sentence of eighteen years.  A court shall sentence a person found to be an habitual offender who has been convicted of a Level 1 through Level 4 felony to an additional fixed term between six and twenty years.  Ind. Code § 35-50-2-8(i)(1)(2014).  The sentencing range for a class B misdemeanor is a term of not more than one hundred eighty days.  Ind. Code § 35-50-3-3 (1977).  The trial court imposed one hundred eighty days for Barrus' conviction of a class B misdemeanor.  Barrus did not receive the maximum sentence that could have been imposed for his convictions and status.

[18]  Turning to the nature of the offenses, we note that Barrus and Tipton, his cousin, developed a plan to get revenge for what Tipton believed was mistreatment by Miller.  They recruited Barrus' girlfriend, Reynolds, to drive them to and from Miller's apartment and to provide them with an alibi for the ensuing police investigation.  Barrus armed himself with a metal bar and

viciously beat Miller over the head with it after he and Tipton had broken into Miller's apartment by way of an upstairs window very late in the night. Barrus and Tipton then hit, stomped, and kicked Miller, who was helpless and on the floor after being struck on the head with the bar. Miller suffered great pain and substantial injuries because of the beating.

[19] Barrus hid the metal bar used by him in the beating, and police officers were unable to find it. Barrus and Tipton hid their involvement in the attack by washing the clothes they wore during the attack and having Reynolds provide them with alibis. Barrus and Reynolds also hid from police making it difficult for law enforcement to question them about their potential involvement.

[20] The nature of the offense involves a violent, premeditated attack on an outnumbered and helpless victim. Evidence of the nature of the offense does not support a downward revision of Barrus' sentence. *See Grundy v. State*, 38 N.E.3d 675 (Ind. Ct. App. 2015) (nature of crime involving vicious attack on helpless victim did not support downward revision of sentence); *Clark v. State*, 26 N.E.3d 615 (Ind. Ct. App. 2014) (premeditated nature of attack causing serious bodily injuries did not warrant downward revision of sentence).

[21] As for the character of the offender, Barrus was on probation when he volunteered to help his cousin seek revenge for a prior encounter in which Barrus was not involved. Barrus chose to take a metal bar to the encounter and encouraged his girlfriend to drive him and Tipton to Miller's apartment and back, and provide an alibi for them to police.

[22] Barrus has a juvenile history and an adult criminal history. His adult criminal history involves convictions for battery, theft, and multiple burglaries. Further, in the pre-sentence investigation report, Barrus claimed that he reluctantly accompanied Tipton, his cousin, to Miller's apartment and that it was Tipton who had brought the metal bar and used it to attack Miller. Miller, on the other hand, unequivocally identified Barrus as the attacker bearing the metal bar, a bar which came from Barrus' place of employment, where he returned it to hide the evidence. At the sentencing hearing, Barrus maintained his innocence. This stands in contrast to his admission in the pre-sentence investigation report that he went to Miller's apartment and participated in the beating of Miller. Barrus has a continuing disdain for abiding by the law, including lying in open court and/or to probation officers.

[23] Barrus has not met his burden of persuading us that his sentence is inappropriate in light of the nature of the offenses and the character of the offender.

[24] Based on the foregoing, we affirm the trial court's sentencing decision. We remand this matter to the trial court, however, for correction of the abstract of judgment to reflect that Barrus' habitual offender determination attaches to his sentence for his Level 1 felony burglary conviction.

[25] Judgment affirmed and remanded.

Bradford, J., and Brown, J., concur.