Michael LAMBERT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 1285S520.

Supreme Court of Indiana.

Dec. 15, 1987.

James C. Patterson, Stephen J. Senderowitz, Dolkart, Patterson & Senderowitz, Chicago, Ill., for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Following a jury trial, defendant Michael Lambert was convicted of criminal deviate conduct and rape, each as a class A felony, resulting in two concurrent 25-year sentences. Defendant's issues may be generally grouped as follows:

1. sufficiency of evidence;
2. failure to exclude victim's hearsay statements;
3. limitation of cross-examination.

### 1. Evidence Sufficiency

Defendant presents four specific arguments involving sufficiency of evidence.

In addressing this issue, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed. 2d 105.

Applying this standard, the evidence indicated that shortly after 1:00 a.m. on June 10, 1984, the prosecuting witness, B.S., left the residence she shared with her boyfriend and walked about 3 blocks to a gas station to buy some cigarettes. As she was returning home, a man grabbed her from behind, placing his arm tightly around her neck and mouth. As she attempted to scream, he threatened to kill her. He then dragged her under a tree, pushed her to the ground, and told her to kiss him. She complied. A sexual assault ensued, after which the man apologized, and B.S. stood and talked with her attacker for five to ten minutes. When she reached for her clothes, the man disappeared. She had been able to observe him because of a nearby street light. As she walked home, B.S. noticed a maroon van which appeared to be following her. Fearing that it might be the man who had assaulted her, she ran to her residence. Upon arriving, she went to the bathroom, brushed her teeth, and washed around her legs. Her boyfriend noticed that she was very upset, and upon his insistence, she told him that she had been raped. B.S. and her boyfriend then drove around looking for the suspicious van. After observing a similar-looking van parked in front of a house, they observed the defendant standing on the porch of the house. At that time, B.S. was unable to identify the defendant as her attacker because she could not get a good look at his face. B.S. and her boyfriend then returned home and reported the incident to the police. Upon their arrival, the police took B.S. over to the defendant's house, obtained a driver's license from him, and showed it to B.S. She then positively iden-

tified it as a picture of her attacker. Defendant was then arrested. Police investigation revealed that the grass under the tree where the victim claimed the attack took place had been crushed and the dirt had been disturbed. The backs of earrings and a shiny penny were found where the victim had said she lost them during the struggle. B.S. suffered a cut around her neck from her necklace when the attacker grabbed her around the neck. Another witness testified that she was awakened sometime after 1:30 a.m. when she heard and then observed a taller person grab a smaller person around the neck and a struggle ensue. Thinking it was two neighborhood boys walking home, she went back to sleep. A few days later, B.S. positively identified the defendant from a photographic display and then again at trial. She described her attacker as big, blond, about 6'2" or taller weighing about 230–250 lbs., strong, smelling of alcohol, wearing blue jeans and a red T-shirt with white or white lines on it. The description matched the defendant. At trial defendant presented several alibi witnesses testifying he was elsewhere during the time of the assault.

■ Defendant first argues that the evidence was insufficient to disprove his alibi defense. He correctly asserts that the State is required to prove defendant's presence at the time and place of the crime beyond a reasonable doubt. *Smithers v. State* (1979), 179 Ind.App. 324, 385 N.E.2d 466. However, an alibi defense does not place the State in the position of bearing a burden of proof greater than would otherwise be required. *Merritt v. State* (1978), 267 Ind. 460, 371 N.E.2d 382; *Casterlow v. State* (1971), 256 Ind. 214, 267 N.E.2d 552. Defendant presented a strong alibi defense in the form of several apparently disinterested witnesses whose testimony regarding defendant's whereabouts would have precluded his involvement in the crime. However, this Court on appeal cannot assess weight and credibility. Defendant's alibi evidence constituted an appeal to the jury to disregard the testimony of the prosecuting witness. *Witt v. State* (1933), 205 Ind. 499, 185 N.E. 645. As the determiner of

witness credibility, the jury was free to disbelieve either the prosecuting witness or the alibi evidence. *Jones v. State* (1978), 267 Ind. 680, 372 N.E.2d 1182. We cannot substitute our appellate impressions for such jury credibility determinations. It was the jury's role to evaluate the evidence and the testimony of witnesses, and the jury was entitled to find against the defendant despite his alibi evidence. *Martin v. State* (1986), Ind., 490 N.E.2d 309. The uncorroborated testimony of a prosecuting witness may be sufficient to sustain a conviction, notwithstanding alibi evidence. *Smith v. State* (1985), Ind., 474 N.E.2d 71. We cannot conclude that the evidence was insufficient to disprove the alibi defense beyond a reasonable doubt.

Defendant next contends that because of substantial inconsistencies, the uncorroborated testimony of B.S., should be insufficient to convict.

It is well established that, notwithstanding an alibi defense, the uncorroborated testimony of a victim is sufficient to sustain a conviction for rape. *Woods v. State* (1985), Ind., 484 N.E.2d 3; *Smith, supra; McCawley v. State* (1980), 274 Ind. 137, 409 N.E.2d 594. We are here presented with a classic example of conflicting evidence which must be settled by the trier of fact. That there were conflicts in the testimony of the State witnesses which materially weakened its case does not alter the rules. *Rosell v. State* (1976), 265 Ind. 173, 352 N.E.2d 750.

This Court will override the jury's assessment of credibility only where the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it. *See, Burton v. State* (1952), 232 Ind. 246, 111 N.E.2d 892; *Thomas v. State* (1958), 238 Ind. 658, 154 N.E.2d 503; *Penn v. State* (1957), 237 Ind. 374, 146 N.E.2d 240. Although the credibility and weight to be accorded the testimony of the prosecuting witness is a matter upon which reasonable minds might well differ, we do not find it incredibly dubious or inherently improbable as a matter of law. Notwithstanding extremely persuasive argument by counsel, we do not

agree that the inconsistencies here impair conviction based on uncorroborated testimony.

Defendant further contends that the evidence was insufficient to establish the threat or use of "deadly force" necessary to upgrade the crimes charged from class B felonies to class A felonies. "Deadly force" is defined by Ind.Code § 35–41–1–7 as "force that creates a substantial risk of serious bodily injury." Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes serious permanent or protracted disfigurement, unconsciousness, extreme pain, or permanent or protracted loss or impairment of the function of a bodily member or organ." Ind.Code § 35–41–1–25.

The victim testified that she was grabbed around the neck and mouth from behind and held tightly, and threatened that if she screamed he'd kill her. The medical examination report showed she had an abrasion on her neck.

Defendant argues that deadly force was not used, and that the assailant's words did not amount to a genuine threat of substantial risk of death under the circumstances. He argues that there was no weapon, no threat of a weapon, no actual injury, and no perceived threat of injury. Citing *Calbert v. State* (1981), 275 Ind. 595, 418 N.E.2d 1158, 1160, defendant contends that, absent other physical injury, an idle threat to kill is insufficient to upgrade the crime from a class B to a class A felony.

The statutory language, construed literally, does not specify that a threat of deadly force must actually create a substantial risk of injury. Such risk must be shown where force is actually used, but not where such use is only threatened.

*Calbert* involved more than a threat to kill. Actual injuries were inflicted which were held to create a substantial risk of serious injury to the victim. It is true that, in dicta, we stated, "the statute requires a showing of more than an idle threat." However, the conviction was affirmed because the threats were uttered in a context in which the defendant was actually inflict-

ing such injury. In the analogous case of *Harper v. State* (1985), Ind., 474 N.E.2d 508, we found that a verbal threat to kill, made while hitting and choaking the victim, was sufficient to sustain a conviction of rape as a class A felony. We similarly found proper evidence of a class A felony in *Smith v. State* (1983), Ind., 455 N.E.2d 606, in which the defendant not only threatened to kill but also placed his hand over the victim's mouth and nose, cutting off her ability to breathe and almost rendering her unconscious. Thus, *Calbert, Harper,* and *Smith* each involved the *use* of deadly force, rather than just the threat of such use. In contrast, a threat of deadly force alone, without its use so as to create a substantial risk of injury, was sufficient evidence to support a class A rape conviction in *Zollatz v. State* (1980), 274 Ind. 550, 412 N.E.2d 1200. The statutory provisions for elevating the offense to a class A felony are satisfied, in the alternative, with either the use of deadly force or the threat of such use.

■ In the present case, the evidence is clear that the assailant's words clearly constituted the threat of use of deadly force. His threat to kill the victim clearly falls within the statutory definition. He threatened the use of deadly force; that is, he threatened the use of force which would, if used, create a substantial risk of serious bodily injury. While he may not have used such force, he threatened to do so, which is the conduct proscribed by the statute.

■ The evidence was of such substantial probative value that the jury could reasonably infer beyond a reasonable doubt that defendant effectuated his felonious intent through the threat of deadly force.

Defendant's final contention of insufficiency relates to proof of penetration as a necessary element of the crime of rape. *Tillman v. State* (1980), 274 Ind. 39, 408 N.E.2d 1250. Defendant claims that there was no evidence that penetration occurred.

In *Chew v. State* (1985), Ind., 486 N.E.2d 516, we held insufficient a victim's testimony that the defendant "made love to me from the back" where the record showed that the victim had ample knowledge of male/female sex organs yet failed to describe the violation with sufficient certainty to establish its occurrence. The record in *Chew* also contained medical evidence too tenuous to permit an inference that the victim suffered vaginal penetration.

In the present case, the evidence of the offense of rape consisted of the following questioning of the victim:

Q. Then what happened?

A. And then, well he kept saying he couldn't believe it and then he knocked me over and then he just got on top of me.

Q. And after he got on top of you, what did he do?

A. Then he *had sex.*

Q. Do you have any idea how long it was that he was on top of you having sex with you?

A. I really couldn't say for sure.

(R.p. 385) (Emphasis added)

Q. Do you know what it means to "ejaculate"?

A. Yes.

Q. What does it mean?

A. To "come".

Q. Did that happen to the guy?

A. Yes, I *believe* so.

Q. Did he ejaculate on you?

A. Well,—

Q. On you or in you?

A. Yes.

Q. Both places or just one?

A. I thought he did in both, *but I'm really not for sure.*

Q. Do you have any recollection of him doing it on both?

A. Yeah, I *think* he did.

Q. Can you tell me your best recollection, as to what happened?

A. Well, I know he did in my mouth and I'm *almost* positive he did *down below* too.

Q. On your legs and inside you?

A. Yes.

Q. When you went home, did you wash your thighs?

A. Not my thighs.

Q. Did you douche?

A. No.

Q. What area of your body did you wash?

A. Like my back, you know, the behind and the private.

Q. When you say "private" what do you mean?

A. The private area.

Q. But you didn't douche?

A. No.

Q. Did you wash your thighs around your private area?

A. No.

Q. Just your private area?

A. Yes, and maybe my legs.

Q. Maybe?

A. Yes, I don't really remember.

(R.p. 451–453) (Emphasis added)

The State concedes the lack of medical evidence of any semen in the victim's vagina. While penetration, not ejaculation, is essential to the crime of rape, the presence of such evidence would have possessed probative value. The prosecuting witness was 21 years old and had been living with her boyfriend for five years. Her other testimony indicated familiarity with the anatomy and function of sex organs.

■ Because of the victim's equivocation and uncertainty regarding vaginal penetration, we find the facts in this case require application of our holding in *Chew*, and accordingly vacate the rape conviction. This will be of small comfort to the defendant, however, because of the equivalent concurrent sentence for the remaining count of criminal deviate conduct.

### 2. Hearsay Evidence

Seeking reversal and new trial, defendant contends that the trial court failed to exclude inadmissible and prejudicial hearsay statements. He argues that the State was thereby permitted to bolster its case by testimony of police officers and the victim's boyfriend regarding the victim's prior out-of-court assertions. While arguing generally that such hearsay statements were "utilized to establish the necessary elements of the crime," defendant does not designate, nor can we find, any elements of the charged offenses which were established exclusively through such hearsay testimony.

Furthermore, the State argues that prior out-of-court statements of a declarant who was present and available for cross-examination may be used as substantive and not merely impeaching evidence. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482; *Smith v. State* (1984), Ind., 465 N.E.2d 702. However, it is improper to put in substantive evidence of a witness-declarant's version of the facts solely through the admission of the witness's prior statement under the pretext of the *Patterson rule*, and at some point the declarant of the prior statement must take the witness stand and provide direct testimony as to the facts at issue. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, *cert. denied*, (1983) 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284. Prior statements by a trial witness cannot be used as a mere substitute for available and direct in-court testimony of such witness. *Samuels v. State* (1978), 267 Ind. 676, 372 N.E.2d 1186; *Stone v. State* (1978), 268 Ind. 672, 377 N.E.2d 1372.

■ As the proponent of the hearsay evidence, the State not only called the victim as a witness, but elicited from her the necessary foundational testimony regarding the specific evidentiary matters which were the subject of her prior out-of-court assertions. In addition, the victim underwent cross-examination upon such matters. This was a sufficient foundation to properly justify a *Patterson* hearsay rule exception. *Douglass v. State* (1984), Ind., 466 N.E.2d 721.

We find no error on this issue.

### 3. Cross Examination

During the cross-examination of the victim, the defense was prohibited from questioning her regarding an infection for which she had been treated at the hospital. The State introduced a medical report containing observations of the physician who

examined the victim following the attack, which report included the following words:

Pelvic speculum very inflamed, red cervix with thick exadate .... she was given medication, tetracycline.

The trial court refused to permit cross-examination as to the medicine prescribed. Defendant contends that these limitations for cross-examination operated to impermissibly corroborate the victim's testimony that she was attacked, and that by precluding the defendant's alternative explanation (vaginitis) for the State's medical findings, the defendant was denied his due process rights to confrontation and fair trial. Defendant also argues that because the vaginitis infection does not relate to her prior sexual conduct, it is thus not prohibited by the Rape Shield Statute, Ind.Code § 35-1-32.5-1. The State responds that the cross-examination of the State's medical witness was prohibited not on the basis of the Rape Shield Statute, but on grounds of relevancy.

■ The medical report was authenticated and admitted during the testimony of a supervisor in the hospital medical records office, and who had received training in reading and transcribing medical terminology. When the defense attempted to cross examine her, the State made a general objection which the court sustained, pointing out that she had not been qualified as a person with knowledge regarding the purposes and uses of the medication. The Rape Shield Statute was neither discussed nor applied. Furthermore, defendant was not precluded from calling additional witnesses for the purpose of explaining the nature and cause of the infection or the purpose and use of the medication. There was no error in limiting the cross-examination of the medical records supervisor.

■ During cross-examination, the victim was asked whether any kind of infection was discovered when she was examined at the hospital. The State objected, citing relevancy. The trial judge then inquired whether defense counsel believed he could establish "some connection between vaginitis and sexual intercourse, or absence thereof." When defense counsel answered

in the negative, the trial court sustained the objection. We find no abuse of discretion.

### Conclusions

The conviction of criminal deviate conduct, a class A felony, is affirmed, and the conviction of rape, a class A felony, is reversed.

SHEPARD, C.J., and DeBRULER, J., concur.

GIVAN, J., dissents as to reversal of rape conviction.

PIVARNIK, J., dissents to the reversal of the conviction for rape and concurs in all other respects.