**Percy WESBY, Robert Powell, Appellants,**

v.

**STATE of Indiana, Appellee.**

**No. 45S00–8812–CR–1021.**

Supreme Court of Indiana.

Feb. 23, 1990.

Scott L. King, Appellate Public Defender, for Percy Wesby.

Nathaniel Ruff, Appellate Public Defender, for Robert Powell.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Judge.

A jury trial resulted in appellant Wesby's conviction of Attempted Murder, a Class A felony, for which he received a sentence of

twenty (20) years. Appellant Powell was convicted of Rape, a Class A felony, and was sentenced to thirty-five (35) years.

The facts are: On February 18, 1988, the victim of the rape, T.M., and her friend, V.K., the victim of the attempted murder, had walked the latter's nephew to school in Gary, Indiana. After leaving the school, they met the latter's boyfriend, Ron Pierre Nickson, and accepted his offer to drive them in his car. Both defendants were in the car at the time.

T.M. testified that she never had met the men before, but she did not hesitate to accept the offer because V.K. knew the men. The group stopped at a liquor store to purchase alcohol and at a housing project to purchase marijuana. Then they drove to Washington Park where they drank the alcohol and shared two marijuana cigarettes.

After leaving the park, they drove to a house which Nickson claimed he owned. The house was unfurnished and unheated. Soon after entering the house, Nickson called the girls "whores" and demanded that they have sexual intercourse with the men in return for the gin and marijuana they had consumed. Nickson said that the girls "weren't going to get high off of us for free." V.K. immediately responded that it wasn't going to be that way and offered Nickson money. Nickson grabbed money from T.M.'s hand.

Appellant Powell approached V.K., and appeared to have a gun. Believing that Powell had a gun and was prepared to shoot V.K., T.M. instinctively pulled her away. Irritated by T.M.'s interference, Powell grabbed T.M. by her jacket and hand and led her into a back bedroom. The door to the room was unhinged and leaning against the wall.

On the floor were several mattresses. Powell told T.M. to undress. T.M. hesitated and pretended to undress. Powell grew impatient and agitated and pushed T.M. onto a mattress. He then ripped her shirt open and proceeded to undress her, removing her pants and underwear. Powell then forced T.M. to commit fellatio. When she attempted to resist, he struck her several

times. Powell then started having sexual intercourse with T.M. and she started screaming. Powell choked her and told her if she was not going to be quiet he was going to kill her. Fearing for her life, T.M. stopped screaming.

When T.M. had started screaming, appellant Wesby had come to the doorway of the room to tell Powell that the girls were going to have to be quiet. After finishing intercourse, Powell left the room; when T.M. tried to leave, Powell stopped her. Incensed that she had tried to escape, Powell picked up the unhinged door and threw it at T.M., striking her in the head. T.M. lay on the floor and pretended to be unconscious. When she heard the men leave the house, she put on her underclothes and jacket and ran out the back door.

While Powell was perpetrating the above-described acts upon T.M., Nickson grabbed V.K. and pulled her into a front room. He told her to take off her clothes and began to beat her with his fists when she refused. V.K. fought back screaming and yelling and ran out of the room toward the back door. As she approached the back door, appellant Wesby blocked her escape, produced a knife, and stabbed V.K. twice in the chest. She fell out the back door and down several steps to the ground where she lay until she heard a car start, whereupon she got up and started running.

T.M. joined V.K. as they reached the backyard fence. V.K. was too weak from loss of blood to climb the fence and T.M. helped her over. The girls then ran until V.K. collapsed from loss of blood. A passing motorist was flagged down and the girls were transported to the hospital.

Upon arrival at the hospital, V.K. registered no blood pressure and no pulse. Emergency surgery was performed to resection several blood vessels in order to save V.K.'s life. She remained hospitalized for nine days.

An examination at the hospital disclosed that T.M. had suffered a puncture wound in the front of her head at the hairline and had swelling about the right jaw. However, her neck showed no visible signs of

the choking. An examination of T.M.'s extremities showed abrasions. A small amount of blood was seeping from her vagina and a rape kit test showed that the seminal material collected was consistent with the blood components of appellant Powell.

Appellant Wesby contends that the evidence is insufficient to sustain his conviction for attempted murder. He claims the State produced no evidence that at the time he stabbed the victim he had the intent to kill her. However, as the State points out, intent may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Johnson v. State* (1983), Ind., 455 N.E.2d 932.

In *Rogers v. State* (1987), Ind., 506 N.E.2d 481, this Court held that where the defendant approached a cashier and stabbed her in the chest with a knife, the evidence was sufficient to prove the occurrence of a substantial step toward the commission of the crime of murder, and that this deliberate use of the knife in a manner likely to cause death or great bodily harm was sufficient to show the requisite intent. So it is with the evidence in the case at bar.

Here, the victim was not cut accidentally with a knife in a scuffle; she was confronted directly by Wesby as she attempted to escape and was stabbed deliberately twice in the chest. The wounds were severe enough to bring the victim close to death. There is ample evidence in this case to support the jury's verdict of attempted murder.

Appellant Powell claims there is insufficient evidence to establish that he committed a Class A felony rape in that there is no evidence he used or threatened to use deadly force. However, as the evidence recited above shows, Powell first had approached the women in a manner indicating that he had a gun. After he had dragged the rape victim into the bedroom, he threw her onto the mattress, ripped off her clothing, forced her to commit fellatio by slapping her several times, then as he raped her and she started to scream, he grabbed her by the throat and told her he would kill her if she didn't stop screaming. We have held previously that a threat of deadly force alone, even without its actual use, so as to create a substantial risk of injury is sufficient to support a Class A felony rape conviction. *Zollatz v. State* (1980), 274 Ind. 550, 412 N.E.2d 1200.

We also have held that a defendant's threat to kill uttered while inflicting injury on the victim by using non-deadly force also sustains a Class A felony rape conviction. *Calbert v. State* (1981), 275 Ind. 595, 418 N.E.2d 1158. The same proposition was reiterated in *Lambert v. State* (1987), Ind., 516 N.E.2d 16 (reversed on other ground on rehearing 534 N.E.2d 235.)

Appellant Powell also claims the evidence is insufficient because a medical examiner could find no marks on T.M.'s throat. Therefore, he argues, she should not be believed when she testified that appellant Powell choked her and threatened to kill her. The jury was within the evidence to find that the choking testified to by the victim would be sufficient to cause her to believe that Powell would in fact kill her if she did not submit even if the choking would not be sufficient to leave marks on her throat. This was evidence which was presented to the jury for their consideration and will not be reweighed by this Court. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

PIVARNIK, J., not participating.