# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2016, 8:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes, Kolbus, Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gregory A. Taylor, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | March 31, 2016 <br><br> Court of Appeals Case No. 20A05-1507-CR-1050 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. 20D03-1312-FB-00145 |

**Bailey, Judge.**

# Case Summary

Gregory A. Taylor, Jr. ("Taylor") appeals his conviction for Criminal Confinement, as a Class B felony.[1]  We affirm.

# Issues

Taylor presents three issues for review:

> I.  Whether there was sufficient evidence to support his conviction;
>
> II.  Whether his defense of involuntary intoxication precluded his conviction; and
>
> III.  Whether his sentence is inappropriate.

# Facts and Procedural History

During the evening of December 11, 2013, Taylor and his girlfriend, Amber Deford ("Deford") were smoking synthetic marijuana in the room they rented from Shanna Gaume ("Gaume").  At some point, Taylor became agitated and began to blame Deford for an alleged debt owed by Taylor's friend, Jimmy Curtis ("Curtis").  Taylor announced that he was moving out and threatened to burn down the houses of both Gaume and Curtis.

---

[1] Ind. Code § 35-42-3-3.

[4] Deford became frightened and attempted to leave. However, Taylor announced that Deford "was going no where" and he grabbed her legs. (Tr. at 437.) Taylor found some prescription pills and began taking them "like an animal." (Tr. at 429.) He also ingested something Deford called "Molly." (Tr. at 429.) Concerned that Taylor had overdosed, Deford inquired about calling for help. Taylor struck Deford on her legs until she surrendered her cell phone.

[5] Apparently in furtherance of his threat to burn down the house, Taylor began to throw bullets at or into a space heater. Deford was able to retrieve them. Also, Taylor doused toilet paper with a household cleaner, telling Deford that it was "extremely flammable." (Tr. at 436.) He threw the paper into the space heater. Deford was able to retrieve some of it, despite Taylor pulling at her legs.

[6] Meanwhile, Deford had managed to hide a utility knife under an air mattress. When Taylor noticed that his utility knife was missing, he held Deford down on the bed and held a second knife to her throat. Eventually, Deford was able to convince Taylor to let her leave and get some drugs from Curtis. Taylor walked Deford to the door, warning her that she must be back in one half hour or Taylor would "burn down the house." (Tr. at 445.)

[7] After Deford walked to Curtis's house, they decided to call police. Taylor was arrested at Gaume's house. A blood analysis revealed that Taylor had ingested methamphetamine and benzodiazepines. He was charged with, and a jury convicted him of, Criminal Confinement. Taylor was sentenced to twenty years imprisonment. He now appeals.

# Discussion and Decision

## Sufficiency of the Evidence

[8] Deford testified that Taylor prevented her from leaving their rented room by threatening her, striking her, holding her down, and holding a knife to her throat. Taylor argues, however, that the State presented insufficient evidence to support his conviction because only Deford testified that she was confined without her consent and "no other witness can corroborate Deford's testimony about what occurred in the room." (Appellant's Br. at 11.)

[9] In order to convict Taylor of Criminal Confinement, as a Class B felony,[2] as charged, the State was required to establish beyond a reasonable doubt that Taylor knowingly or intentionally confined Deford, without Deford's consent, and did so while armed with a deadly weapon, a knife. I.C. § 35-42-3-3; App. at 15.

[10] When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008). We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant

---

[2] The offense is now a Level 3 felony. We refer to the version of the statute in effect at the time of Taylor's offense.

was guilty beyond a reasonable doubt. *Id.* A conviction may be sustained on the uncorroborated testimony of a single witness. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[11] However, under the incredible dubiosity rule, a reviewing court may impinge upon the responsibility of the jury to judge witness credibility when the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015). "[T]he application of this rule has been restricted to cases where there is a single testifying witness." *Id.* at 757. In *Moore*, the Court found the rule inapplicable because, while there was only one eyewitness to the shooting, other witnesses' testimonies "placed Moore at the scene" or provided other forms of corroboration. *Id.*

[12] Here, Deford's testimony was not equivocal. Also, multiple witnesses offered corroborative testimony. Officers testified that they had photographed bruises on Deford's legs and had recovered a knife from Taylor's person. Gaume testified that she heard "a lot of ruckus" coming from Taylor's room on the night in question. (Tr. at 375.) Gaume's son testified that he had gone upstairs and tried to find out what was happening, but Taylor would not let him talk to the then-crying Deford. The incredible dubiosity rule does not apply here. The State presented sufficient evidence to support Taylor's conviction.

# Involuntary Intoxication

[13] Taylor asserts that the jury could not properly have convicted him, because he established, by a preponderance of the evidence, a defense of involuntary intoxication pursuant to Indiana Code Section 35-41-3-5:

> It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body: (1) without his consent; or (2) when he did not know that the substance might cause intoxication.

[14] Taylor had given a statement to police, in which he claimed that, before he came home on December 11, 2013, Curtis had "shot him up" with an "oxy speed ball," causing Taylor to "feel weird." (Tr. at 542.) Taylor had, at the same time, insisted to police that he "never put his hands" on Deford. (Tr. at 545.)

[15] At Taylor's trial, his police statement was read into evidence and Taylor obtained a jury instruction on involuntary intoxication. In closing argument, Taylor's counsel suggested that "at least part" of Taylor's story about involuntary ingestion of drugs had been corroborated by the finding of methamphetamine in his blood stream. (Tr. at 644.) Taylor did not testify. Primarily, his defense was that Deford was not credible.

[16] To the extent that Taylor may be said to have interposed a defense of involuntary intoxication, it was within the province of the jury to disbelieve such evidence. *See Lambert v. State*, 516 N.E.2d 16, 19 (Ind. 1987) (stating that,

because the jury acts as the determinant of witness credibility, the jury is free to disbelieve proffered evidence). Taylor's conviction will not be set aside because the jury rejected an involuntary intoxication defense.

## Sentence

[17] Upon conviction of a Class B felony, Taylor was subject to a sentence of between six and twenty years, with an advisory sentence of ten years. I.C. § 35-50-2-5. He received the maximum sentence, which he claims is inappropriate.

[18] Under Appellate Rule 7(B), this "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." It is the defendant's burden to persuade this court that his sentence '"has met th[e] inappropriateness standard of review."' *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[19] The nature of Taylor's offense is that he confined his girlfriend over an extended period of time. He alternately struck Deford, held her down, and held a knife to her throat. Deford sustained multiple bruises in the process. Taylor repeatedly threatened to burn down the house and appeared to be making

efforts to do so. Taylor allowed Deford to leave only when she persuaded him that she would procure drugs. Even then, he walked her to the door and instructed that she had a very short time frame in which to return and prevent the burning of the residence – where at least one other tenant was then present.

[20] As for Taylor's character, he has seven prior felony convictions and three misdemeanor convictions. He has had probation revoked on five occasions. He was on parole at the time he committed the instant crime.

[21] Having reviewed the matter, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

# Conclusion

[22] Taylor's conviction is supported by sufficient evidence. The jury was not obliged to accept evidence of involuntary intoxication. Taylor's twenty-year sentence is not inappropriate.

[23] Affirmed.

Bradford, J., and Altice, J., concur.