John Dell CARR, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 73S00–9709–CR–487.

Supreme Court of Indiana.

April 18, 2000.

Kris Meltzer, Shelbyville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

John Dell Carr was convicted of the murder of Shirley Sturgill and sentenced to sixty years imprisonment. In this direct appeal he contends that (1) his right to be free from unreasonable searches and seizures was violated when he was anesthetized for the taking of dental impressions; (2) the trial court abused its discretion in denying his Motion for Change of Venue; (3) there is insufficient evidence to support his conviction and rebut his alibi defense; (4) the trial court committed fundamental error in instructing the jury on circumstantial evidence; (5) he is entitled to a new trial because of jury misconduct; and (6) his trial counsel rendered ineffective assistance. We affirm the judgment of the trial court.

### Factual and Procedural Background

Firefighters were dispatched to the apartment of Shirley Sturgill in the late evening hours of October 6, 1990. Finding the door locked, they forced entry and extinguished a fire in Sturgill's bedroom. Sturgill's body was found naked on the bed. Both of her nipples had been bitten off and a toilet bowl brush protruded from her vagina. An autopsy was performed on the morning of October 8. The cause of death was ruled manual strangulation. The pathologist also observed bite marks on Sturgill's right and left thigh, and Dr. Donnell Marlin, a forensic odontologist, examined, photographed, and made models of the bite marks.

The investigation soon focused on Orville Jack Dobkins, who lived in an adjacent apartment and had visited Sturgill at approximately 9:00 p.m. on the evening of the murder. On October 24, Dobkins was arrested and charged with Sturgill's murder. The State also filed a request for the death penalty. Dobkins provided dental impressions which were compared to the bite marks on Sturgill's body. Dr. Marlin issued a report on December 18, 1990, concluding that "within the bounds of a reasonable medical certainty, the teeth of Jack Dobkins match the various bite marks on the body of Shirley Sturgill." On May 15, 1991, Dr. Mark Bernstein examined the work of Dr. Marlin. Dr. Bernstein concluded that the comparisons offered "good supporting evidence to implicate Mr. Dobkins but could not alone prove, to a degree of reasonable medical certainty, that Dobkins made the bites." The State dismissed the charges against Dobkins on May 16, 1991.

At the time of Sturgill's death, her daughter Angie Carr was married to Carr. By 1994 Angie and Carr had divorced and on August 3, 1994, Angie told Detective Bill Dwenger that Carr left their family's trailer at about noon on October 6, 1990, and did not return until late that night. When he returned, Carr took off his clothes, put them in the washing machine, and showered. Carr and Angie went to bed about forty-five minutes later. After lying in bed for a few minutes, Carr rose,

walked to a gun cabinet, took out a rifle, and pointed it at Angie's head. Carr told Angie that he had "hurt" or "took care of" her mother. He said he would kill her and their daughters if she ever said anything. He then grabbed her by her hair, walked her to their daughters' bedroom, pointed the gun at the girls, and reiterated that he meant what he had said.

In 1993 police had submitted cigarette butts found in Sturgill's apartment to the FBI for DNA analysis. A 1995 report comparing DNA from saliva on one butt to Carr's concluded that the two matched at five loci. The probability of two unrelated Caucasians with this correlation was 1 in 4,500.

On February 16, 1996, a Shelby County Grand Jury indicted Carr for the murder of Sturgill and the arson of her apartment. The State later dismissed the arson count. After a ten-day trial in April of 1997, a jury convicted Carr of murder. Carr was sentenced to sixty years imprisonment.

## I. Anesthetization for Dental Impressions

■ Carr argues that the State violated his Fourth Amendment right to be free from unreasonable searches and seizures when it collected his dental impressions while he was anesthetized.[1] In his brief, Carr characterizes the procedure as follows:

> The procedure was so serious that Dr. Kenny recommended that it be carried out in a fully equipped surgical room with resuscitation equipment and personnel available. The Defendant was placed under full anesthetic rendering him fully unconscious, the throat of the Defendant was packed with material which blocked the airway, a nasal intubation procedure was used which allowed the Defendant to breath[e]. Without the nasal intubation procedure the Defendant could not have breathed on his own.

■ "The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Its "proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Id.* at 768, 86 S.Ct. 1826. Carr does not deny that a voluntary dental impression is easily performed without resort to anesthesia or serious bodily intrusion. More drastic procedures, including anesthesia, were required in his case because of his refusal to comply with a valid search warrant for the dental impressions.

Carr contends that we should evaluate the constitutionality of the drastic procedures under the balancing test set forth by the United States Supreme Court to determine whether a surgical intrusion violates the Fourth Amendment. *See Winston v. Lee*, 470 U.S. 753, 761–62, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985) (weighing the extent to which the procedure may threaten the safety or health of an individual and the extent to which it intrudes upon the per-

1. Although Carr's argument focuses on the dental impressions, he also mentions blood, saliva, and hair samples that were taken on the same day. He contends that, because the same samples were originally taken in 1991, retaking these body samples five years later constituted prosecutorial misconduct. In a March 1996 hearing on the State's request for samples, a detective testified that samples had been taken from Carr in 1991 and sent to the Indiana State Police Laboratory, but that an insufficient amount of hair had been taken and apparently the blood and saliva had not been properly preserved. Carr argues that the State's (in this case, a detective's) representation that it needed additional samples was misconduct warranting reversal. The State does not specifically respond to this allegation but rather asserts that, because the latter samples were not used at trial, there was no prejudice to Carr's rights. Assuming that requiring a defendant to submit to repeated sampling may constitute State misconduct in extreme cases, the State's requesting one set of additional samples after five years based on an apparent mistaken belief that they were needed is not such a case.

son's dignitary interest in personal privacy and bodily integrity against the community's interest in fairly and accurately determining guilt or innocence). We think these factors are plainly inapplicable where the allegedly drastic and invasive procedure is necessitated by a defendant's refusal to comply with a valid search warrant. If this were not the case, the law would create an incentive to refuse to comply with valid search warrants for the most basic of procedures in order to force a drastic procedure that might violate the Fourth Amendment.

■ As this Court has previously held, ordering a defendant to submit to the taking of dental impressions does not violate the Fourth Amendment when supported by probable cause. See Wade v. State, 490 N.E.2d 1097, 1101–02 (Ind.1986). Because the warrant was supported by probable cause and the voluntary submission of dental impressions does not violate Winston, there is no Fourth Amendment violation in the more drastic procedures required to obtain Carr's compliance.

## II. Change of Venue

■ Carr next contends that the trial court abused its discretion by denying his motion for change of venue from Shelby County. To prevail on this claim Carr must show that (1) there was prejudicial pretrial publicity and (2) the potential jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence. See Eads v. State, 677 N.E.2d 524, 525 (Ind.1997); Brown v. State, 563 N.E.2d 103, 105 (Ind. 1990). We review a trial court's ruling on a motion for change of venue for an abuse

of discretion. See Williams v. State, 690 N.E.2d 162, 176 (Ind.1997).

■ Carr makes only general allegations regarding juror views expressed during voir dire. Without citation to the responses of any specific jurors, he contends that "voir dire does not reveal potential jurors were able to set aside pre-conceived notions and render a verdict based solely on the evidence...." Eight of the twelve selected jurors stated that they had no knowledge of the case. Three of the remaining four jurors did not respond when asked by the trial court if they had "information from the media or from talking to people, hearsay, whatever, that you feel that would weigh so heavily on your mind that you would have difficulty in deciding this case based upon the evidence that you hear in the case only?" The final juror engaged in a brief colloquy with the trial court before concluding that she could "make a decision based on the evidence." Carr points to nothing more. The trial court did not abuse its discretion in denying Carr's motion for change of venue.[2]

## III. Sufficiency of the Evidence

■ Carr contends that there is insufficient evidence to support the jury's verdict and that the State did not disprove his alibi defense. Our standard of review for sufficiency claims is well settled. We do not reweigh evidence or assess the credibility of witnesses. Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty be-

---

**2.** Carr also notes that he requested the opportunity to question prospective jurors about pretrial publicity individually during voir dire, but that the request was denied. He suggests that he was unable to establish whether the prospective jurors who had read about the case would be able to render an impartial verdict because "counsel was not allowed to examine said jurors individually and without tainting the rest of the panel." However,

there is no right to individual voir dire and the matter falls within the trial court's "broad discretionary power in regulating the form and substance of voir dire examination." Hadley v. State, 496 N.E.2d 67, 72 (Ind.1986). Although individual voir dire "may be required where the circumstances are highly unusual or potentially damaging to the defendant," id., Carr has made no such showing in this case.

yond a reasonable doubt. *Taylor v. State,* 681 N.E.2d 1105, 1110 (Ind.1997).

■ There is more than ample evidence to support Carr's conviction. A former co-worker of Carr's testified that in July or August 1990 Carr told him he "could not stand [Sturgill]. He told me that he wished she was dead. He told me that I ... wouldn't believe how much he wanted her dead." Angie testified that shortly after Carr's return home on the evening of Sturgill's killing, he told her that he had hurt and choked her mother. The DNA results were admitted. Dr. John Kenney, the Chief Forensic Odontologist for the Cook County (Illinois) Medical Examiner's Office, compared the four bite marks found on Sturgill's body with dental impressions obtained from Carr. Dr. Kenney testified at trial that the bite marks on Sturgill's right leg and left nipple were consistent with Carr's teeth and that the left groin and right nipple injury "could have been caused" by Carr's teeth, but no firm conclusion was possible.[3] In sum, this is sufficient probative evidence from which a jury could have concluded beyond a reasonable doubt that Carr killed Sturgill.

■ This evidence is also sufficient to rebut Carr's alibi defense. The State is not required to rebut directly a defendant's alibi but may disprove the alibi by proving its own case-in-chief beyond a reasonable doubt. *Lott v. State,* 690 N.E.2d 204, 209 (Ind.1997). A jury may choose to disbelieve alibi witnesses if the State's evidence renders such disbelief reasonable. *Id.; Lambert v. State,* 516 N.E.2d 16, 19 (Ind.1987) ("We cannot substitute our appellate impressions for such jury credibility determinations.").

Carr offered the testimony of David Taylor and Carr's sister, Dorcia Short in support of his alibi. Short testified that Carr arrived at her trailer sometime before 6:00 p.m. on October 6, 1990, and Taylor arrived a few minutes later. According to Short, Taylor and Carr talked at her kitchen table and later joined her in the living room where the three watched movies. Carr left for a few minutes around 10:00 p.m. but returned before leaving again at approximately 11:00 p.m. Taylor offered a similar account of events, save that Carr was gone for thirty to forty-five minutes. Carr contends that this time frame is significant because the murder must have been committed between 10:45 p.m. and 11:20 p.m.,[4] and it takes seventeen to nineteen minutes to drive from Sturgill's apartment to Carr's home. These times and Carr's alibi conflict with Angie's testimony that Carr did not arrive home until approximately 12:00 or 1:00 a.m. and that when she had looked in the direction of Short's trailer earlier that night she did not see Carr or his truck. It was the jury's exclusive prerogative to weigh conflicting evidence. *See Robinson v. State,* 699 N.E.2d 1146, 1148 (Ind.1998). There is sufficient evidence to support its rejection of Carr's alibi and its conclusion that he killed Sturgill.

## IV. Circumstantial Evidence Instruction

■ Carr next contends that the trial court erred in refusing his tendered instructions dealing with circumstantial evidence. The two tendered instructions were similar and in essence stated that in cases resting entirely on circumstantial evidence the evidence must be so conclusive as to exclude every reasonable theory of innocence. *See* 2 *Indiana Pattern Jury Instructions (Criminal)* 12.01 (2d ed.1991). Carr contends the trial court was required to give this instruction because the State's

3. Dr. Kenney also testified that he found "no concordance whatsoever" between Dobkins' teeth and the injuries to Sturgill's nipples.

4. This time frame advanced in Carr's brief is a best case scenario for him based on the selective reliance of certain testimony: Angie testified that she talked to her mother, who was at home alone, on the telephone at "around" 10:30 p.m. for "about ten or fifteen minutes"; the fire department was called at 11:37 p.m.; and a neighbor smelled smoke approximately ten minutes before the fire department was called.

evidence was entirely circumstantial. The short answer to this claim is that Angie testified at trial that Carr had told her shortly after the time of the murder that he had "hurt and choked" Sturgill. A defendant's confession of guilt to another person is direct evidence. *See Stahl v. State*, 616 N.E.2d 9, 11 (Ind.1993). Because the State's case did not rely solely on circumstantial evidence, the trial court properly refused Carr's tendered instructions. *See id.* at 12.[5]

## V. Juror Misconduct

 Carr also contends that his Sixth Amendment right to an impartial jury was violated by juror misconduct. During the course of the trial one juror bought newspapers that included stories about the trial. However, the juror testified unequivocally at a motion to correct error hearing after trial that she did not read the papers until the trial had concluded. She testified that she purchased the papers to compare the news stories with her notes after the trial.

 In order for jury misconduct to warrant a new trial, the defendant must show that the misconduct was gross and that it probably harmed the defendant. *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind. 1988). It would be preferable that jurors arrange for someone else to accumulate newspapers during a trial to avoid any issue along these lines, but even if questionable, the juror's conduct here was reviewed by the trial court. The trial court's finding that Carr made no showing of harm appears correct and is certainly not clearly erroneous. Accordingly, Carr's claim of juror misconduct fails.[6]

## VI. Ineffective Assistance of Counsel

 As a final point, Carr contends that his trial counsel rendered ineffective

assistance. To establish a violation of the Sixth Amendment right to effective assistance of counsel, Carr must show that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate." *Davis v. State*, 675 N.E.2d 1097, 1100 (Ind.1996) (quoting *Terry v. State*, 465 N.E.2d 1085, 1089 (Ind. 1984)). As to the prejudice prong, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. More recently, the Supreme Court of the United States held that prejudice resulting from ineffective assistance is not established unless the error rendered the result of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

 Carr points to two instances of alleged ineffectiveness. First, he argues that trial counsel should have called Roderick Dickman to testify at trial. Dickman was one of the firefighters who responded to the call at Sturgill's residence. Dickman gave a statement to police on December 11, 1990, in which he stated that on the morning after the fire Dobkins had asked him if he had been at the fire and whether he knew anything about it. Dickman responded that he could not discuss the fire with Dobkins but asked Dobkins what he had heard. According to Dick-

---

5. In his reply brief, Carr contends that *Stahl* is distinguishable because it involved "an actual confession to two credible witnesses," whereas "Angie Carr's story is not even credible." It is the jury's prerogative—not this Court's—to assess the credibility of witnesses, and we see no reason why *Stahl* should not apply to this case.

6. For the same reason Carr's suggestion of ineffectiveness of counsel for failure to object to the juror's action fails.

man, Dobkins "knew quite a bit about the body and about the toilet brush being up [Sturgill's] vagina. . . ." Trial counsel testified at the motion to correct error hearing that he believed he had overlooked Dickman's statement and agreed that it would have been important to the case against Carr because it showed that Dobkins had knowledge of specific details of the crime shortly after it occurred. However, during Carr's case-in-chief, another firefighter testified that several firefighters had discussed finding a victim in Sturgill's unusual condition. Dobkins may very well have learned about the condition of the body from another person. Moreover, defense counsel pursued the Dobkins-may-have-done-it defense by calling Dobkins as a witness to point out that he had been charged with the murder (and the death penalty) shortly after the fire in 1990 and by presenting expert testimony suggesting Dobkins was the source of the bite marks found on Sturgill's body. Because there is not a reasonable probability that the jury would have acquitted Carr if trial counsel had presented Dickman's testimony, Carr's first claim of ineffective assistance must fail.

■ Carr also contends that trial counsel was ineffective for failing to impeach Angie's testimony. Specifically, he argues that trial counsel should have pointed out that her statements to police and depositions contained inconsistencies.[7] Carr points out that Angie had gone on record six times: a statement to police in October of 1990, testimony at Dobkins' bail hearing in December of 1990, her 1994 report accusing Carr, Grand Jury testimony in February of 1996, a deposition in December of 1996, and another deposition in April of 1997. Angie first implicated Carr in her statement to police in August of 1994. Carr also points to alleged inconsistencies in Angie's statements regarding the days

Carr worked, the day she last saw her mother, Carr's whereabouts earlier in the day of the crime, the number of automobiles the couple owned, and the times at which she spoke to her mother on the telephone. However, none of these issues cuts directly to the evidence of Carr's guilt of Sturgill's murder. Angie testified on direct examination that she did not come forward with information implicating Carr until 1994 because she was afraid for her own life and her children's. Moreover, trial counsel questioned Angie at some length about her failure to tell the police of Carr's alleged involvement in the months immediately following the crime, while Dobkins was incarcerated for the killing and facing the death penalty.

■ There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and a defendant must present "strong and convincing evidence" to overcome this presumption. *Broome v. State*, 694 N.E.2d 280, 281 (Ind.1998). The jury knew that Angie did not come forward with allegations against Carr until 1994. Trial counsel's failure to impeach her testimony based on the tangential inconsistencies identified by Carr on appeal was not deficient performance and there is not a reasonable probability that doing so would have produced a different verdict. Trial counsel was not ineffective.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

---

7. Carr also suggests that trial counsel was ineffective for failing to use Angie's prior statements to challenge her credibility and her "prior statement against Orville Jack Dobkins." The purported statement against Dobkins is nothing more than Angie telling police that when she spoke to her mother earlier that evening Dobkins was at her mother's apartment. She did not tell police that she had any information directly linking Dobkins to the killing.